the last case for argument today is Hernandez versus Garland and I believe that petitioners counsel is mr. Frenzel is that correct oh that's correct your honor okay and miss Corley Corliss do you say yes okay very well for the Attorney General okay so mr. Frenzel please proceed thank you good morning may it please the court Niels Frenzel on behalf of petitioner Jose Hernandez petitioner Hernandez is a lawful permanent resident of the United States who was found removable due to a misdemeanor domestic violence conviction and then found ineligible for relief from remove removability by the Board of Immigration Appeals he sought two forms of relief cancellation of removal for lawful permanent residents and asylum in regard to the cancellation of removal application under a USC 1229 be a lawful permanent resident or an LPR who is removable may have his removability canceled and retain their LPR status if the LPR has not been convicted of an aggravated felony if the aggregate the LPR has been a lawful permanent resident for at least five years and at issue in this case if the LPR has continuously resided in the United States for at least seven years after having been admitted in any status mr. Hernandez should be considered as having been admitted in any status when he was granted temporary protected status by the government in Sanchez your honor Sanchez vs. Mayorkas which overturned the Ninth Circuit's decision or abrogated the Ninth Circuit's decision rather in Ramirez is not relevant to this case and so yes it should be ignored because Sanchez dealt with the interplay between admission and the adjustment of the TPS as an admission and the adjustment of status provision at 1255 section 1255 of the Act we're gonna need I mean I'm gonna need you to dive into that a little bit because the INA defines admission one way and one time and then it uses that word throughout and I read Sanchez as the court instructing there's a difference between status and admission and let's and so admittedly that we're dealing with a slightly different context and a different provision of the INA but we're dealing with the same word and so I don't know how you can just so easily dismiss Sanchez well your honor I I dismiss it in part well I dismiss it because Sanchez deals with the interplay between the adjustment of status provision and TPS statute and and the board itself acknowledged even when Ramirez was still good law when this circuits decision in Ramirez was still good law the board acknowledged that Ramirez did not have any applicability to the interplay between the LPR cancellation of removal statutory language and the the concept of you know could have been something that the respond that petitioner could have pointed to both the Board of Immigration Appeals and the IJ both recognized that it was that we were dealing with a different interplay situation interplay between statutes but isn't it possible that Sanchez says that that's a distinction without a difference when we're talking about what isn't isn't admission well the court and the government you know relies and in this in Medina versus Nunez which adopted the BIA's holding in matter of Reza Murillo acknowledges that the that the question of admission is not only defined by the port of entry definition of admission at 1101 a 13 the the dealing with here the statutory language at issue in the LPR cancellation of removal status is the specific language after having been admitted in any status that is language that is different from the port of entry definition of admission what was your client lawfully he lawfully entering to the United States he didn't his initial coming into the United States was in 1999 was not a lawful admission to the United States that that is correct or he was not admitted then because admission is defined as the lawful entry of an alien into the United States correct that that is the definition at 1101 a 13 for a port of entry admission it's our contention and this is what this definition of admission is is is possible and should be considered when appropriate well the Supreme Court didn't seem to say that in Sanchez it it did not but again and I recognize them I'm repeating myself your honor that was dealing with the interplay the relationship between the 12 1255 the and and again that is not okay thank you thank you your honor just just just to be clear before you move on to your next point do you agree that if Sanchez does control because the INA defines admission in a particular way that that's the end of the story for your client on that issue that's done if would resolve that and I won't repeat my argument on that well judge Smith okay thank you um and so to you know to continue with my you know with my with my proposition the Board of Immigration Appeals concluded in denying the cancellation of removal application for mr. Hernandez relied exclusively on this decision in 2020 decision and Enriquez versus bar that the board said stood for the proposition that only the port of entry definition of admission that we've been talking about at 1101 a 13 is sufficient for LPR cancellation of removal and this is not what Enriquez said Enriquez said what this court and what the Board of Immigration Appeals have said for years while admission and this is you know repeating what I've you know what I've been responding to a moment ago while admission is certainly generally defined by the port of entry definition at 1101 a 13 C if a port of admission and admission entry did not occur an alternate construction of admission must be considered when the statutory context so dictates the board did not engage in this step in mr. mr. Hernandez's case it misread Enriquez versus bar and for that reason the board's rationale in regard to denying mr. Hernandez cancellation of removal should be should be reversed since and this is what Enriquez said and this is what a matter of Reza Murillo says that the board excuse me that the Ninth Circuit adopted in the Medina Nunez decision if a port of entry admission did not occur the alternate construction of the concept of admission of the statutory term admission must be considered and that's a two-step process the first step is to assess the nature of benefits conferred by this other status in this case we're arguing in regard to temporary protected status and yes we were arguing that that TPS was this other status and that a determination must be made as to whether or not the use of the port of entry definition at 1101 a 13 would produce absurd results or if there are other compelling reasons for diverting from the port of entry definition of admission so in regard to TPS benefits they are substantial this court in the Ninth Circuit in Ramirez again abrogated by by Sanchez but this court in Ramirez noted the rigorous nature of the TPS application process the court said the application and approval process for securing TPS shares many of the main attributes of the usual admission process for non-immigrants and the TPS statute provides substantial benefits to the individual granted TPS protection really I I take your point about comparing FUP and EPS but as I mentioned a minute ago if if Sanchez controls we don't even get to this do we we do not okay agreed your honor and and I can I can make a few more points in regard to this but you know my from my perspective I think you did a very fine job and you're briefly explaining why you believe Sanchez doesn't control and how you can match these two statutes and how it works my only problem with it would be as you talk about you know the particularly serious crime and you there's a kind of an aggregation of three different offenses one in fact if you look at what the record says the the IJ said that he was his March 2nd 2016 conviction is particularly serious he didn't aggregate them or just a single one so to the degree we get to it I think that point is not valid well your honor so I'll shift gears to the to the particularly serious crime bar which is obviously applicable in the asylum in regard to mr. Hernandez's asylum application and I would disagree with your judge Smith your your characterization of what the IJ did the Board of Immigration appeals in its decision upholding the IJ's decision regarding the particularly serious crime  continued to reoffend and the circumstances referring to the previous to domestic violence convictions the circumstances are relevant to and were properly considered in the overall assessment of whether the third conviction for domestic violence in a little over a year was particularly serious the board which is the decision that this court is reviewing the board is clearly looking at all three of the domestic violence convictions pertaining to mr. Hernandez well they're looking at the totality of the circumstances in connection with that conviction and making a decision based on what could properly probably happen as he progresses up the line of less serious to more serious I understand your what you are saying judge Kelly I would push back and say the statutory language refers to a crime a particularly serious crime I point it's not it's dicta but I point to judge Reinhart's concurring opinion in the Delgado versus a holder case where judge Reinhart wrote that the particularly serious crime statutes referring to the particularly serious crime bar in both the asylum and withholding context provide no conceivable basis for the agency to consider the convictions cumulative effect the the sort of progression that I believe your honor judge Kelly you are you are referring to that is something that the criminal law will take care of and that is what we indeed saw with the sentence that was imposed as a result of mr. Hernandez's third domestic violence conviction he the criminal law system is looking at the cumulative effects if you will but the particularly serious crime bar in the statute at 1158 refers to a single conviction do you want to save the balance of your time up to you but I will your honor thank you judge Smith you're welcome Miss Corliss morning may please the court Lindsay Corliss the respondent this court should deny the petition for review the agency properly denied petitioners application for cancellation of removal cancellation of removal requires that an applicant establishes among other things that he has resided in the United States continuously for seven years after having been admitted in any status now the parties in this case agree that petitioners accrual of his continuous residence ended in 2015 but we diverge as to when that accrual began now petitioner claims that the accrual began in 2001 when he was granted temporary protected status he is incorrect because a grant of temporary protected status does not constitute being admitted in any status now the Supreme Court as you've been discussing incentives versus my York has recently confirmed that these types of types of analyses of these statutes have to start with the plain language of the statute here the plain language of the statute says that the term admitted has a definition and it's lawful entry to the United States after inspection and authorization by a US immigration officer and the Supreme Court in such as versus my work has clarified that that is the diss that that is the definition and the courts cannot expand that nearly because they they wish that the statutes could help more people temporary protected status does not involve the entry into the United States at all in fact it's a type of temporary relief from removal that is only available to non-citizens who are already present in the United States it's not something that you can come to the United States in order to receive it's not a status at the border the 8th Circuit recently published a decision or Tola we stated that the plain language of the cancellation of removal statute clarifies that a grant of temporary protected status does not trigger the accrual of continuous residence purposes of cancellation of removal and and we would argue that this court should find the same based on the Supreme Court's definition of admitted and and the fact that TPS certainly does not need that definition if the government's position is that should end the inquiry but if this court does disagree it should still find that a grant of temporary protected status does not constitute being admitted in any status the board and the court as petitioner discussed previously expanded the definition of admitted in status to cases where there are compelling reasons to justify the deviation from the normal standard including to avoid absurdities however the case law from this circuit establishes that this court views of that exception extremely narrowly it has rejected the following lawful set of the following taxes as insufficient to trigger the approval of continuous residence including VAWA status says the granting of an I-130 petition which would allow someone to apply for for adjustment of status the family unity program special immigration juvenile preferred for parole deferred action NACARA UV says discretionary for parole now these were all rejected despite many of them carrying significant benefits like lawful status United States work the permission to travel outside of the United States and in some cases even a path to lawful permanent residency or even to citizenship in fact the only cases that the only instances in which the board and the courts have said let's expand the definition in order to avoid absurdities is in the case of adjustment of status adjustment of status has long been considered a legal fiction that at one point the board actually even thought per se rule that adjustment of status would be considered an admission in all cases and that's been rejected by the courts but the courts still every single court in certain instances already considers adjustment of status to be an admission so there is a history there that that TPS certainly doesn't share so so given that the the exception has been interpreted so narrowly our argument is that that TPS certainly doesn't qualify under that very narrow exception if I don't have any any questions on on on that aspect of my argument I'll move on to the denial of asylum on grounds that petitioner was convicted of a particularly serious crime what about what about the length of time if you if you start to run that from his LPR status date he doesn't make the requisite no he gets five years from from from that time because he was he was granted status as he adjusted the stop when he when he commits the offense that rendered him removable so petitioner was convicted of willfully willfully having inflicted a corporal injury resulting in a traumatic condition upon his ex-wife so the agency considered the nature of the crime itself the sentence and the underlying circumstances when serious crime specifically the agency considered that this was a crime of violence that it was the crime committed against a person rather than against property they considered that it was that it carried a significant sentence of 364 days and they considered that it happened during a routine argument rather than then particularly stressful or extraordinary circumstances now petitioner doesn't address any of those aspects and instead challenges the fact that the agency also mentions that it viewed this as particularly serious in part because he had already committed the same offense twice before and was convicted twice before now the agency did not as he stated consider all of his criminal history there's nothing about his best defense nothing about receiving stolen property and and it's very clear that that they're really only looking at domestic violence conviction but the fact that it is his third against the same victim is relevant for a couple different reasons first one of the underlying circumstances of the event is that he committed this crime while he was while there was a restraining order in place so he wasn't even supposed to be around this person at the time that he violently assaulted her that's part of the nature of the crime and second the other fact the other the other instances did factor into his sentence and the sentence is something that the agency properly considers I'll just address really quickly an argument that that petitioner is making for this court that that only the criminal courts consider these sorts of other other factors when making the sentence and then that that it wasn't proper for the agency to also consider them but that's not true the understanding that the criminal court will have more evidence before it and likely factor in many circumstances that won't be obvious to the immigration court is factored into the particularly serious crime analysis that is why the agency is directed to look at the sentence said crimes carrying larger sentences are they're taking a cue from from the criminal courts that this was particularly serious or it was viewed as particularly serious by the criminal courts so it is relevant not just in the criminal courts what his sentence was but it was relevant also in zone proceedings and finally I would just by saying that it was that that another aspect of this is that it was against the same victim so there is an injury that occurs a psychological injury when someone is that this is the subject of repeated domestic violence this is this is something that he could have anticipated when he committed this crime that there's a psychological injury if someone has tried to go to the courts trying to get a restraining order tries and is still unable to prevent him from continuing to abuse her so that let me ask you this if if you're opposing counsel is correct that the BIA but the BIA did indeed consider all three crimes what impact if any does that have on look we're gonna look at your overall criminal record and we're gonna see what you know whether or not you really met your burden or not based on all of these crimes and we'll put them together I think that that would be problematic and in that point you'd have to remand because also you have to consider that asylum requires a whole other slew of holdings that the board and the agency never made so in that case yes you would remand but if you look at what the board actually did in this case they they said this is that this is the one conviction that we are looking at we are looking at all of the things that have to do with this we're looking at what he said we're looking at what what the criminal court said and giving the sentence we're looking at what the elements of the crime are and and then also in addition we are noting that this happened in a certain way which he does not dispute that it happened in a restraining order against him so so in this case there's simply not enough to say that in any way that they were looking at his total criminal record what they were saying is that in this particular instance it was relevant that these sort that this was a repeat offender so basically it helped to define that third crime the fact that there was a restraining order for sample is that your point yes okay if the court doesn't have any questions any more questions then I'll just ask that the court denied a position for a review and thank you for your time any other questions by my colleagues I think not so let's hear a wind up from our counsel for the petitioner thank you just two brief responses one coming back to Sanchez versus my Orcas and I would just point out that the the Ramirez case which again was the TPS case abrogated by by Sanchez is discussed in the BIA decision denying mr. Hernandez's cancellation of removal application and at the time when the Ninth Circuit recognized TPS as an admission for purposes of the adjustment status the agency is distinguishing the interplay between the TPS and the adjustment statute and the TPS status and the LPR cancellation of removal status and that's exactly what this court again did and Enriquez versus bar it did not rely on Ramirez which was still good law at the time it noted that Ramirez did not define admission for purposes of LPR cancellation of removal and if that's right what does that do to this case if Sanchez is not applicable what that does to this case is it comes back to the point that I was making earlier is that under Reza Maria under the BIA case under Enriquez versus bar the agency was required to consider an alternate construction of it basically we end up constrain FUP and the others and deciding who gets what benefit of deciding who was who was nice and who was naughty yes your honor it is the season for that the benefits of the status and whether or not there are for constructing an alternate definition of the statute I think judge Kelly had a question did you judge you covered it thank you okay thanks to both counsel we appreciate your argument in this case the case of yes or non days versus guard Garland is submitted and they came the court stands adjourned for the day thank you your honors
judges: Kelly, SMITH, FORREST